UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE NO. |
| ) | 1:09-CV-2880-CAP |
| FRANK SHELP, M.D., in his official ) | |
| capacity, as Commissioner, Georgia ) | |
| Department of Behavioral Health and ) | |
| Developmental Disabilities, ) | |
| ) | |
| Defendant. ) | |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**Interest of the United States**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517,[1] because this litigation involves the proper interpretation and application of federal law, including the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801–10851, and the

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001–15115, known collectively as the "P&A Acts." Accordingly, the United States has a strong interest in the resolution of this matter. See, e.g., Brief for the United States as Amicus Curiae, Va. Office for Prot. & Advocacy v. Reinhard, No. 09-529 (S. Ct. May 2010); United States' Memorandum as Amicus Curiae, Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Connecticut, No. 3:06-cv-00179 (D. Conn. Nov. 25, 2009); Statement of Interest of the United States, Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin., No. 1:06-cv-1816 (S.D. Ind. June 16, 2008); Brief for Intervenor United States of America, Iowa Prot. & Advocacy Servs., Inc. v. Tanager Place, No. 04-4074 (8th Cir. May 11, 2005). Indeed, the United States' strong interest in this case is magnified by the grievous instances of abuse and neglect concerning individuals with mental illness and developmental disabilities alleged in our recent Complaints against the State of Georgia. See Amended Complaint, United States v. Georgia, No. 1:09-cv-119 (Jan. 28, 2010) (Doc. 53); Complaint, United States v. Georgia, No. 1:10-CV-249 (Jan. 28, 2010) (Doc. 1).

## Statement

Plaintiff Georgia Advocacy Office, Inc., brings this action under 42 U.S.C. § 1983 for injunctive and declaratory relief to redress Defendant Commissioner Frank Shelp's alleged denial, partial denial, and delay of access to the state hospital facilities, to the people confined in these institutions, and to records maintained by Defendant and these facilities. See Amended Complaint [Doc. 7, ¶ 1] (hereafter, "Am. Compl.") Defendant challenges Plaintiff's cause of action and claims that the requested relief is moot. See Answer [Doc.12, at 2].[2] This Statement of Interest by the United States addresses only the issue of the access authority conferred on the Protection and Advocacy systems ("P&As") under the P&A Acts. The P&A Acts grant the P&As broad access to people, facilities, and records in order to achieve the Acts' goal of protecting vulnerable individuals from abuse and neglect.

---

[2] Defendant also raises defenses concerning sovereign immunity and Eleventh Amendment immunity, see Answer [Doc. 12, at 2], which the United States does not address at this time. However, the United States notes that the Seventh Circuit recently rejected those arguments as applied to a P&A, Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin., 603 F.3d 365, 374 (7th Cir. 2010) (en banc) ("The Eleventh Amendment does not bar [the Indiana P&A's] request for declaratory and injunctive relief against the named state officials."), and the Supreme Court just granted certiorari on the issue, Va. Office for Prot. & Advocacy v. Reinhard, No. 09-529, 2010 WL 2471082 (S. Ct. June 21, 2010).

## Statutory and Regulatory Background

In 1975, Congress enacted the first of several grant programs that provide States funding to create P&As to protect individuals with disabilities or mental illness from abuse and neglect. The law was enacted in response to reports of severe abuse and neglect at a New York state institution for persons with developmental disabilities. See Pub. L. No. 94-103, § 203, 89 Stat. 486, 504 (1975); S. Rep. No. 93-1297 (1974), 1974 U.S.C.C.A.N. 6373, 6408-6409. Congress reauthorized the program in 2000 as part of the DD Act. 42 U.S.C. §§ 15001–15115.

Similar concerns about abuse and neglect of individuals in state-run psychiatric facilities led to the enactment of the PAIMI Act, in 1986. See S. Rep. No. 99-109, reprinted in 1986 U.S.C.C.A.N. 1361, 1362–63. The PAIMI Act authorized additional funding for the same P&As established pursuant to the DD Act and expanded their mission to encompass the protection of individuals with mental illness. See Pub. L. No. 99-319, 100 Stat. 478 (1986). The PAIMI Act was reauthorized most recently in 2000. Pub. L. No. 106-310, § 3206, 114 Stat. 1101,

1193–95 (2000) (codified as amended at 42 U.S.C. §§ 10801–10851). Congress also has enacted several statutes that provide additional funding for the P&As.[3]

The federal statutes authorize the state-created P&As to investigate incidents of abuse or neglect if such incidents are reported to the P&A or if the P&A has probable cause to believe that an incident of abuse or neglect occurred. 42 U.S.C. §§ 10805(a)(1)(A), 15043(a)(2)(B). To ensure that such investigations are effective, the statutes vest P&As with investigatory powers, including a right of access to records relevant to an investigation in enumerated circumstances. 42 U.S.C §§ 10805(a)(4), 15043(a)(2)(I) & (J). As the PAIMI Act makes explicit, these rights of access are federal rights that exist even if "the laws of a State prohibit [the P&A] from obtaining access to the records of individuals with mental illness." 42 U.S.C. § 10806(b)(2)(C); see Ctr. for Legal Advocacy v. Hammons, 323 F.3d 1262, 1272 (10th Cir. 2003) ("We agree that [PAIMI] language reveals a

---

[3] See 29 U.S.C. § 794e (funding for P&As to serve persons with disabilities not eligible under previously established P&A programs); 29 U.S.C. § 3004 (funding for P&As to assist individuals with disabilities in obtaining assistive technologies); 42 U.S.C. § 1320b-21 (funding for P&As to assist beneficiaries of Social Security to secure or regain employment); 42 U.S.C. § 300d-53 (funding for P&As to serve individuals with traumatic brain injury); 42 U.S.C. § 15461 (funding for P&As to assist individuals with disabilities in the electoral process, through means other than litigation).

5

congressional intent to preempt state laws prohibiting access to records . . . ."); Pa. Prot. & Advocacy, Inc. v. Houstoun, 228 F.3d 423, 428 (3d Cir. 2000) ("PAIMI preempts any state law that gives a healthcare facility the right to withhold such records."); see also U.S. Const., art. VI, cl. 2. In addition, the P&A statutes provide that a P&A shall have authority to pursue legal, administrative, and other appropriate remedies to ensure the protection of individuals with disabilities or mental illness. 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(I).

A state that chooses to participate in these federal spending programs has the option to designate either a state agency or a private nonprofit entity to serve as its P&A. See 42 U.S.C. §§ 10804(a)(1), 15044(a). In either case, to ensure that the P&A will be effective in investigating abuse and neglect at state-run (as well as private) facilities, the P&A must be independent of any state agency that provides treatment or services. See 42 U.S.C. §§ 10805(a)(2), 15043(a)(2)(G).

## Summary of Facts

The State of Georgia elects to participate in these federal spending programs and, thereby, receives federal funding to provide P&A services to individuals with disabilities. See Am. Compl., ¶ 5. Georgia chose to establish its P&A as a private,

6

non-profit corporation known as Georgia Advocacy Office, Inc.—the Plaintiff in this case.  See Am. Compl., ¶ 4.

Pursuant to its authority under the P&A Acts, Plaintiff investigates deaths and incidents when it has probable cause to believe that abuse or neglect has occurred at state hospitals.  42 U.S.C. §§ 10805(a), 15043(a)(2)(B).  As part of its investigatory process, Plaintiff requests records and conducts interviews of people believed to have relevant information about the incidents, and conducts on-site visits to the hospitals.  See Am. Compl., ¶ 11.  Plaintiff also relies on access to "peer review records" in its investigations—records produced by medical staff members or committees of medical staff who examine the care provided by a peer medical staff member "to determine whether the medical staff member under review has met accepted standards of care in providing health services."  See Am. Compl., ¶ 17.  Peer records are particularly useful in investigations because they "disclose . . . the process and outcome of reviews by state hospital medical staff and any recommended corrective or remedial actions regarding incidents of patient abuse and neglect, injury, and death within these facilities."  Id.

Defendant is the Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD").  See Am. Compl., ¶ 1.

DBHDD operates seven state run regional hospital facilities that provide services to individuals with mental illness and developmental disabilities, including Southwestern State Hospital. Am. Compl.,¶ 4.

Plaintiff alleges that Defendant routinely fails to comply with its requests for access to records, including peer review records, either by producing incomplete records, delaying the production of records for lengthy periods of time, or denying access altogether. See Am. Compl., ¶¶ 16, 18, 19. Plaintiff also alleges that Defendant has denied Plaintiff unaccompanied access to facilities and has prevented Plaintiff from interviewing or speaking to patients without a hospital staff member being present. See Am. Compl., ¶¶ 21, 22. Plaintiff alleges that timely and unrestricted access to records and individuals in the facilities is essential to fulfill its statutory mandate. See Am. Compl., ¶¶ 9, 13, 16, 19.

Plaintiff specifically alleges that it received information that a resident with mental illness had been subject to sexual abuse while confined at Southwestern State Hospital. See Am. Compl., ¶¶ 23, 24. After determining that there was probable cause that the abuse occurred, Plaintiff opened an investigation and informed Defendant that, on October 12, 2009, its representative would visit the Hospital to conduct an investigation and monitor the facility. See Am. Compl.,

8

¶¶ 26-27. Defendant's employee denied Plaintiff's access to the patient in question and to the hospital facility, alleging that a member of the hospital staff was not available to accompany Plaintiff on the investigation. See Am. Compl., ¶¶ 29, 30. Defendant acknowledges that hospital staff denied Plaintiff access to the facility, but claims that the victim of the abuse did not wish to meet with Plaintiff and that hospital staff was preoccupied with a site visit from the United States Department of Justice ("DOJ").

Plaintiff filed a complaint with this Court seeking a temporary restraining order and a preliminary injunction. On December 9, 2009, the Parties informed the Court that they were trying to come to an agreement, and Plantiff withdrew its motion for preliminary injunction at that time. See Minute Entry, Dec. 9, 2009 [Doc. 11]. However, the Parties failed to reach an agreement and subsequently filed cross-motions for summary judgment. [Doc. 20, 25].

## Discussion

The federal P&A program was prompted by revelations of "inhumane and despicable conditions" in a state-run facility. Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 494 (11th Cir. 1996). For example, as alleged in our recently-filed Complaints against the State of Georgia,

individuals in the Georgia State Hospitals—the very facilities to which Plaintiff seeks access— have been subjected to homicide, rapes, suicides, suicide attempts, questionable medical deaths, assaults by peers, regression and loss of skills from inadequate treatment and services, harm from excessive restraint and administration of sedating medications, harm from inadequate medical and nursing care, harm from the lack of services to persons with specialized needs, harm from inadequate discharge planning, and harm from inadequate community-based supports and services. See Amended Complaint, United States v. Georgia, No. 1:09-cv-119, at ¶¶ 32–189 (Jan. 28, 2010) (Doc. 53); Complaint, United States v. Georgia, No. 1:10-CV-249, at ¶¶ 11–76 (Jan. 28, 2010) (Doc. 1).

  Congress structured the P&A program to ensure that P&As would be effective in investigating abuse and neglect in state, as well as private, facilities. Id. Congress thus gave the P&As "broad access to records, facilities, and residents." Id. at 497. Congress' clear intent in establishing the P&A program was to create entities capable of protecting individuals who, by virtue of their disabilities, are unable to protect themselves. See, e.g., id. at 498 n.3 ("Congress legislated the [DD] Act to protect disabled people who are unable to protect themselves.").

1.   **Access to Facilities and People**

In investigating suspected incidents of abuse or neglect, P&As are entitled to "reasonable unaccompanied access" to facilities and programs that provide services, supports, care, or treatment to individuals with disabilities, and to "all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R. § 51.42; 45 C.F.R. § 1386.22(f). This access includes the authority "to interview any facility service recipient, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation." 42 C.F.R. § 51.42; 45 C.F.R. § 1386.22(f). Moreover, P&As are entitled to this access at the times "necessary to conduct a full investigation." 42 C.F.R. § 51.42; 45 C.F.R. § 1386.22(f).

2.   **Access to Records**

To ensure that P&As have the tools that they need to investigate abuse effectively, Congress mandated that P&As have access to "all records" of a suspected victim of abuse or neglect. 42 U.S.C. §§ 10805(a)(4)(B)(iii), 15043(a)(2)(I)(ii)(III). In addition, Congress gave P&As the authority to pursue administrative, legal, and other appropriate remedies to ensure the protection of

11

individuals with mental illness or developmental disabilities who are receiving care or treatment in the State, 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i).

In enacting the original PAIMI Act, Congress recognized that the P&As would need broad access to records in order to fulfill their mandate and expressed its intent to grant P&As the fullest possible access: "The Committee recognizes the need for full access to facilities and clients and to their records in order to ensure the protection of mentally ill persons. It is the intent of the Committee that the [P&A system] have the fullest possible access to client records . . . ." S. Rep. 109, 99th Cong., Sess. 10 (1985), reprinted in 1986 U.S.C.C.A.N. 1361, 1370. Indeed, Congress deemed access to facilities and records so vital to the protection of people with disabilities that, under the PAIMI Act, it granted P&A systems a right of access to patient records even if "the laws of a State prohibit [a system] from obtaining access to the records of individuals with mental illness." 42 U.S.C. § 10806(b)(2)( c) (emphasis added).

3. **Courts have interpreted P&A Access Authority Broadly To Fulfill the Mandates of the P&A Acts**

Courts have taken a broad view of P&A access authority by consistently holding that facilities must permit the P&A to operate effectively and with broad

12

discretion and independence in accessing individuals, facilities and records for investigative purposes. See Disability Rights Wisc., Inc. v. Wisc. Dep't of Pub. Instruction, 463 F.3d 719, 728–30 (7th Cir. 2006) (authorizing P&A access to records related to a state agency investigation into use of seclusion rooms for disciplining students at an elementary school); Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 240–45 (2nd Cir. 2006) (authorizing P&A access to a school for children with disabilities to investigate complaints of abuse and neglect and to obtain a directory of students and contact information for parents and guardians). A number of Circuit Courts also have specifically required disclosure of peer review materials such as those requested by Plaintiff in the course of its investigations. See Ind. Prot. & Advocacy Servs, 603 F.3d at 382 ("In light of the language of the PAIMI Act itself . . . we join all other circuits that have addressed the issue and agree . . . that peer review records are 'records' under the PAIMI Act."); Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Comm'r, Conn. Dep't of Mental Health & Addiction Servs., 448 F.3d 119, 128 (2d Cir. 2006) ("[W]e join our sister circuits in holding that the plain language of PAIMI that grants . . . access to all records of any individual, including reports prepared by any staff of a facility, encompasses

13

peer review reports." (internal quotation marks omitted)); Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Health, 447 F.3d 1021, 1026 (8th Cir. 2006); Ctr. for Legal Advocacy, 323 F.3d at 1272; Pa. Prot. & Advocacy, 228 F.3d at 428.[4]

For example, in Alabama Disabilities Advocacy Program, 97 F.3d at 494, the Eleventh Circuit granted a P&A access to medical records of deceased former residents of a state facility for persons with developmental disabilities. The P&A had received an anonymous telephone call alerting them to the residents' deaths, and the State refused to release the records. Id. at 495. In finding that the anonymous telephone call constituted a complaint and established probable cause of abuse or neglect, the court analyzed the case "within the broad remedial framework" of the Act:

---

[4] The United States Department of Health and Human Services, which administers the DD and PAIMI programs, see 42 U.S.C. §§ 15002(26), 15004, 10802(6), 10803, 10826, has promulgated regulations defining records as including certain evaluative materials, but stating that "nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." 42 C.F.R. § 51.41(c)(4); 45 C.F.R. § 1386.22(c)(1). As noted above, notwithstanding HHS's regulations, a number of courts of appeals have ruled that the plain text of the PAIMI Act explicitly preempts state peer-review privileges. Whether a P&A system is entitled to obtain access to peer-review records when such records are privileged under state law is currently under regulatory review. See 73 Fed. Reg. 19,708, 19,731–32 (2008).

> It is clear that the Act provides express authority for the P&As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued. In adopting the provision of the Act mandating P&A access to facility residents, Congress gave substance to its intent to assure that the most vulnerable individuals [institutionalized persons] who may not be able to contact the P&A system will have access to protection and advocacy services.

Id. at 497 (alteration in original) (internal citations and quotation marks omitted).

And, in Mississippi Protection & Advocacy, Inc. v. Cotten, 929 F.2d 1054, 1059 (5th Cir. 1991), the Fifth Circuit upheld an injunction enjoining the State from interfering with a P&A's authority to access residents at a state facility. The court held that the plain text of the DD Act required that the state have an effective protection and advocacy system, agreeing with the district court's findings that "[t]he state cannot . . . establish[] a protection and advocacy system which has . . . authority in theory, but then tak[e] action which prevents the system from exercising that authority," and that the State's restrictive practices reduced the P&A to offering "only a fraction of the services to which [residents] are entitled." Id. The court also held that the State's restrictive practices "rendered nugatory" the "authority to investigate incidents of abuse and neglect," and "render[ed] the state's

15

requirement to have in effect a system to protect and advocate the rights of persons with developmental disabilities comatose if not moribund." Id. (internal quotation marks omitted).

## Conclusion

Congress enacted the P&A Acts to protect individuals with developmental disabilities or mental illness from abuse and neglect—the very instances of abuse and neglect alleged against the State of Georgia in the United States' recently-filed Complaints— and granted to the P&As broad access rights to fulfill this mandate. A narrow interpretation of these statutes would strip the P&As of the ability to protect these vulnerable individuals and would render their authority meaningless. Accordingly, the Court should interpret the P&A Acts broadly. With the Court's permission, counsel for the United States will be present if the Court schedules a hearing on this matter.

(Continued on next page.)

Respectfully submitted,

| | |
|---|---|
| SALLY QUILLIAN YATES<br>United States Attorney<br>Northern District of Georgia | THOMAS E. PEREZ<br>Assistant Attorney General<br><br>SAMUEL R. BAGENSTOS<br>Principal Deputy Assistant Attorney<br>  General<br>Civil Rights Division<br><br>JUDY C. PRESTON<br>Acting Chief<br>Special Litigation Section<br><br>MARY R. BOHAN<br>Acting Deputy Chief<br>Special Litigation Section |
|   /s/ Mina Rhee<br>MINA RHEE [GA 602047]<br>Assistant United States Attorney<br>Northern District of Georgia<br>600 United States Courthouse<br>75 Spring Street, SW<br>Atlanta, GA  30303<br>Tel:  (404) 581-6302<br>Fax:  (404) 581-6163<br>Email:  Mina.Rhee@usdoj.gov |   /s/ Robert A. Koch<br>TIMOTHY D. MYGATT [PA 90403]<br>ROBERT A. KOCH [OR 072004]<br>EMILY A. GUNSTON [CA 218035]<br>Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br>Tel:  (202) 514-6255<br>Fax:  (202) 514-0212<br>Email:  Robert.Koch@usdoj.gov |

## Local Rule 7.1D Certification

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

          <u>/s/ Robert A. Koch</u>
          ROBERT A. KOCH
          Attorney
          U.S. Department of Justice
          Civil Rights Division
          Special Litigation Section

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2010, I electronically filed the STATEMENT OF INTEREST OF THE UNITED STATES with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Jason S. Naunas
>Mark J. Cicero
>Assistant Attorneys General
>State of Georgia
>
>Joshua H. Norris
>Georgia Advocacy Office, Inc.

>　　/s/ Robert A. Koch_
>ROBERT A. KOCH
>Attorney
>U.S. Department of Justice
>Civil Rights Division
>Special Litigation Section